# UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| ALEXIS SANCHEZ, AMI BRYANT, | ) | |
| ANDREW HARSH, BERYL WATNICK, | ) | CASE NO. _____ |
| CIANA JONES, CORINA SMITH. | ) | |
| CRYSTAL POWELL, CYNTHIA BLOCKSOM, | ) | |
| DANEESHA TILLMAN, DAVID MCDONNELL, | ) | |
| DAVID VERDONCK, DR. ROLAND PANDOLFI,| ) | |
| JENNIFER ROTHROCK, JULIE CRANDALL, | ) | Judge |
| KAREN WALSH, KONGPHENG YANG, | ) | |
| LAURA WRIGHT, LAWRENCE HIBBERT, | ) | |
| LINDA SMITH, LISETTE RODRIGUEZ, | ) | |
| LOREE MILTICH, MARJORIE WILLIAMS- | ) | |
| COOPER, MARY MILLER, BONNIE HIPP, | ) | |
| MICHAEL SIMANGA, MICHELLE KEFFORD, | ) | |
| MONIQUE SKINNER, NADINE WHEAT, | ) | |
| PATRICK PENNEY, PAUL BRUGMAN, | ) | |
| PEARLLENE FORD, RACHEL DAIGLE, | ) | |
| RENEE CAVE, ROBERT KNIGHT, and | ) | |
| TERRI MENDOZA, | ) | |
| | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNION INSTITUTE AND UNIVERSITY, | ) | |
| EDGAR L. SMITH, JR., DR. JEFFREY M. | ) | |
| SHEPARD, DONALD FELDMAN, | ) | PLAINTIFFS' COMPLAINT AND |
| ROGER ALLBEE, KAREN BIESTMAN, | ) | DEMAND FOR JURY TRIAL |
| DR. GLADYS GOSSET HANKINS, | ) | |
| DR. EDWIN C. MARSHALL, | ) | |
| CHRISTINE VAN DUELMAN, AND | ) | |
| DR. KAREN SCHUSTER WEBB, | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' COMPLAINT

Plaintiffs, by counsel, allege against Defendants as follows:

## I.   **PARTIES**

1.      Plaintiffs, Alexis Sanchez, Ami Bryant, Andrew Harsh, Beryl Watnick, Ciana Jones, Corina Smith, Crystal Powell, Cynthia Blocksom, Daneesha Tillman, David McDonnell, David Verdonck, Dr. Roland Pandolfi, Jennifer Rothrock, Julia Crandall, Karen Walsh, Kongpheng Yang, Laura Wright, Lawrence Hibbert, Linda Smith, Lisette Rodriguez, Loree Miltich, Marjorie Williams-Cooper, Mary Miller, Bonnie Hipp, Michael Simanga, Michelle Kefford, Monique Skinner, Nadine Wheat, Patrick Penney, Paul Brugman, Pearllene Ford, Rachel Daigle, Renee Cave, Robert Knight and Terri Mendoza   (collectively "Plaintiffs"), worked for Defendant Union Institute and University ("Union"), located in Cincinnati, Ohio, at all relevant times to this Complaint.

2.      Defendant Union is an Ohio non-profit corporation with a principal place of business in this judicial district.

3.      Defendants Edgar L. Smith, Jr., Dr. Jeffrey M. Shepard, Donald Feldmann, Roger Allbee, Karen Biestman, Dr. Gladys Gosset Hankins, Dr. Edwin C. Marshall, Christine Van Duelman (collectively, the "Board Defendants") are or were members of Defendant Board.

4.      Dr. Karen Schuster Webb ("Webb") is the President of Defendant Union.

## II.   **INTRODUCTION**

5.       Due to Plaintiffs filing this lawsuit for various causes of action, the individuals who collectively make up the Plaintiffs will be individually named pursuant to their respective claims as laid out below.

6.      Defendants subjected Plaintiffs and all other similarly situated employees to the same payroll policies and procedures as outlined in the factual allegations below.

7.      At all relevant times to this Complaint, Defendant Webb was acting in her official capacity as President of Defendant Union.

8. At all relevant times to this Complaint, Board Defendants were acting in their official capacity as the Board of Trustees for Defendant Union.

9. At all relevant times to this Complaint, Defendant Union was the employer of Plaintiffs under the Fair Labor Standards Act ("FLSA"), as defined by 29 U.S.C. § 203(d).

10. At all relevant times to this Complaint, Plaintiffs were employees of Defendant Union under the FLSA and Ohio's Minimum Fair Wage Standards Act ("OMFWSA").

11. Defendants have violated the FLSA by failing to pay Plaintiffs minimum wage for the hours worked as outlined in 29 U.S.C. § 206.

12. Defendants have violated OMFWSA by failing to pay Plaintiffs minimum wage for the hours worked as outlined in Ohio Revised Code ("O.R.C.") § 4111, *et seq.*

13. Defendants have violated the Ohio Prompt Pay Act ("OPPA") by failing to pay Plaintiffs as required by Ohio Code § 4113.15.

14. Defendants have violated the Ohio Constitution, Article II, Section 34a, by failing to pay at least the Ohio minimum wage for each year during the relevant time period.

15. Defendants have breached their contractual obligations to Plaintiffs in violation of Ohio Common Law for unjust enrichment.

16. Defendants are estopped from denying promises made to Plaintiffs under Ohio Common Law.

17. Defendants are liable for the tortious interference with Plaintiffs' employment contracts for the misrepresentations made by Defendant Webb on behalf of and in her capacity as President of Defendant Union regarding Plaintiffs' wages and/or benefits.

18. Defendants are liable for the negligent misrepresentations made by Defendant Webb on behalf of and in her capacity as President of Defendant Union to Plaintiffs regarding their wages and/or benefits.

19. Defendants are liable for the gross negligent conduct from Defendant Webb's misrepresentations made on behalf of and in her capacity as President of Defendant Union to Plaintiffs regarding their wages and/or benefits.

20. Defendants were negligent per se by failing to handle Plaintiffs' fringe benefits with the care required under OPPA.

21. Defendants have breached their fiduciary duties under the Employment Investment Retirement Income Security Act of 1974 ("ERISA"), codified in 29 U.S.C. § 1104. Defendants breached their co-fiduciary duty that each owed individually to Plaintiffs under 29 U.S.C. § 1105. Plaintiffs have a right to bring this Claim to recover benefits due to them pursuant to 29 U.S.C. § 1132(a). Individual Defendants are each personally liable for these breaches under 29 U.S.C. § 1109(a). The following are the breached fiduciary duties for which Defendants are liable:

   a. Defendants have breached their fiduciary duty of prudence by failing to act with care, skill, prudence, and diligence under the circumstances when dealing with Plaintiffs' benefits, which are to include but not be limited to health insurance, dental insurance, vision insurance, health savings accounts and 403(b) retirement funds.

   b. Defendants have breached their fiduciary duty of disclosure to Plaintiffs by failing to provide accurate and material information regarding Defendant Union's benefits to employees.

   c. Defendants have breached their fiduciary duty of loyalty and care to Plaintiffs by failing to utilize the loyalty and care necessary to ensure Plaintiffs would not be harmed by Defendants' actions when handling finances for employee benefits.

22. Plaintiffs herein assert their right to relief jointly and severally in that their claims arise out of related transactions and occurrences and arise out of the same questions of law in accordance with Federal Rule of Civil Procedure 18.

23.     Plaintiffs herein assert their right to relief jointly and severally in that their claims arise out of related transactions and occurrences and arise out of the same questions of law in accordance with Federal Rule of Civil Procedure 20.

24.     Plaintiffs seek declaratory, injunctive, compensatory, economic, liquidated, punitive and other relief against Defendants to redress violations of Plaintiffs' statutory and common law rights.

## III.     JURISDICTION AND VENUE

25.     This Court has federal question jurisdiction under 28 U.S.C. § 1331 for the claims arising out of the alleged violations of the FLSA and ERISA in Title 29 of the United States Code.

26.     This Court has supplemental jurisdiction over the various state claims under 28 U.S.C. § 1367 because the claims are so related to the federal question jurisdiction of this Court that they form part of the same case or controversy.

27.     Venue is proper in this Court under 28 U.S.C. § 1391 because at all relevant times, Defendants are residents of this judicial district and a substantial number of events giving rise to the claims occurred there.

## IV.     FACTUAL ALLEGATIONS

28.     On or about July 1, 2018, Defendant Webb was hired as Defendant Union's Sixth President since its inception in 1964. At the time of Defendant Webb's hiring, Defendant Union had a roughly $6.3 million budget surplus and a $3 million dollar endowment.

29.     In 2019, after Defendant Webb's first year as President of Defendant Union, the university had a decline in revenue of 20% and posted a $1.7 million loss.

30.     In 2020, Defendant Union's annual losses increased to $2.6 million. An auditor of Defendant Union raised substantial doubts about Defendant Union's ability to continue operating.

31.     In 2021, three years after Defendant Webb took over as President, Defendant Union was forced to sell its headquarters. On or about July 2021, Defendant Union sold the building and additional land for a loss.

32.     COVID-19 allowed Defendant Union to receive $4.1 million in federal grants in 2021 and 2022, compared to the $535,000 in previous years. This boosted 2021's revenue 16%. Despite the boost in revenue, Defendant Union still lost $794,018 for the year.

33.     During Defendant Webb's Presidency, Defendant Union was subject to a 41% decrease in revenue from tuition and fees while program service expenses increased. Defendant Union's total student headcount dropped 36% and the full-time enrollment dropped 69% from 2017 to 2021.

34.     In 2022, Defendant Union lost $539,668. This brought the total losses under Defendant Webb's leadership to $5.6 million. After four years with Defendant Webb as its President, Defendant Union had $5 million less in cash than when she first took over and the endowment dropped to only $2.1 million.

35.     On or about April of 2022, Defendant Union established a line of credit with Fifth Third Bank in 2022 that had to be paid off by January of 2023. Plaintiffs do not know the status of this loan.

36.     Plaintiffs all worked for Defendant Union during the 2023 calendar year.

37.     Plaintiffs consist of employee faculty members and administrative employees at Defendant Union.

38.     Defendant Union is a university that employs both hourly, stipend and salaried employees.

39.     Board Defendants oversee all operations at Defendant Union, including Defendant Union's finances, fiscal responsibility, payroll practices, policies, and procedures, and the job

performance of Defendant Webb. Defendant Webb is the President of Defendant Union and oversees the agenda of Board Defendants.

40.     In June 2023, Plaintiffs and their colleagues took a vote of no confidence in Defendant Webb. Board Defendants took no corrective action.

41.     On or about June 20, 2023, many Plaintiffs were provided with written employment contracts. These contracts renewed their employment contract with Defendant Union for the 2023-2024 academic year.

42.     The renewed employment contracts provide for certain wages and benefits to be paid to these Plaintiffs by Defendant Union.

43.     Many other Plaintiffs were provided verbal contracts and promises ensuring an ongoing employment relationship.

44.     Defendant Webb and Board Defendants were aware that Plaintiffs are entitled to pay for work performed and benefits owed under contracts and ongoing employment relationships.

45.     Since at least December of 2022, Defendants have failed to pay or made late payments to Plaintiffs for work performed and benefits owed under the employment contracts and ongoing employment relationships on multiple occasions.

46.     Since at least July of 2023, Defendants have failed to pay Plaintiffs for any hours worked and/or for benefits owed.

47.     Since that time Defendant Webb, in her capacity as President of Defendant Union, has repeatedly reassured Plaintiffs that they will be paid for their past and ongoing work.

48.     Many Plaintiffs continue to work but have not received any wages or benefits for months.

49.     On or about September 6, 2023, Defendant Webb, in her capacity as President of Defendant Union, held a town hall event. During the event, she reassured employees that their benefits were still intact.

50.     Many Plaintiffs relied on Defendant Webb's promises that their benefits were still available and received medical treatment. Plaintiffs learned shortly thereafter that their benefits were retroactively revoked on June 30, 2023.

51.     Many Plaintiffs had insurance premiums deducted from their wages in early and mid-2023. By information and belief, those premiums intended for health insurance benefits were misappropriated by Defendants.

52.     Many Plaintiffs have lost their life insurance benefits.

53.     Many Plaintiffs learned in October 2023 that their Health Savings Accounts were locked out by Defendants.

54.     Many Plaintiffs filed for unemployment benefits and learned Defendant Union failed to pay unemployment taxes, thus interfering with Plaintiffs' abilities to lawfully obtain unemployment.

55.     On or about the week of November 10, 2023, Plaintiffs were notified that the "Fall 2" session for undergraduates and master's programs were cancelled, but that courses would resume in January. The notification came with a statement that Defendant Union would use November and December to reorganize and restructure to "Become a Better Union."

56.     Many Plaintiffs continue to fulfill their obligations under their employment contracts. Many other Plaintiffs continue to work despite not being underwritten contract. These employees continue to work to ensure the students can graduate.

57.     As a result of Defendants' failure to pay Plaintiffs for work performed, Plaintiffs have incurred damages.

58.     As a result of Defendants' failure to pay Plaintiffs for benefits owed, Plaintiffs have lost benefits which include but are not limited to health insurance.

## V.     CLAIMS BY ALL PLAINTIFFS RELATED TO WAGES

## COUNT ONE: VIOLATION OF THE OHIO PROMPT PAY ACT

59.     Plaintiffs incorporate paragraphs 1 through 58 by reference herein.

60.     Defendant Union qualifies as an "employer" for purposes of Chapter 41 of the Ohio Code.

61.     Defendant Union, through acts within the scope of Defendant Webb and Board Defendant's employment and capacity at Defendant Union, have knowingly violated the OPPA by failing to pay Plaintiffs on or before the first of the month for the first half of the preceding month and on or before the fifteenth of the month for the last half of the preceding month as required by Ohio Code § 4113.15.

62.     Defendant Union continues to deny Plaintiffs' payment on or before the first of the month for the first half of the preceding month and on or before the fifteenth of the month for the last half of the preceding month. Defendant Union continues to deny Plaintiffs' wages for hours worked. Defendant Union's ongoing violations were, and continues to be, in bad faith.

63.     Plaintiffs seek injunctive relief requiring Defendant Union to pay on or before the first of the month for the first half of the preceding month and on or before the fifteenth of the month for the last half of the preceding month in compliance with the OPPA.

64.     Plaintiffs' wages remain unpaid for more than thirty (30) days beyond their regularly scheduled payday.

65.     Defendants' violations of the OPPA have been of a willful, intentional, or bad faith nature or Defendants have otherwise exhibited a reckless disregard of the OPPA's provisions.

66.     Plaintiffs are entitled to liquidated damages in the amount of six percent (6%) or $200.00, whichever is greater.

## COUNT TWO: UNJUST ENRICHMENT

67.     Plaintiffs incorporate paragraphs 1 through 58 by reference herein.

68.     Plaintiffs worked for Defendants in exchange for wages.

69.     Defendants enjoyed the benefits of Plaintiffs' work but willfully refused to pay Plaintiffs their wages for the worked performed by them.

70.     As a result, Defendants have been unjustly enriched at the Plaintiffs' expense in the amount of the wages Defendants unlawfully refused to pay.

71.     Defendants have knowledge of the benefit illegally conferred.

72.     Defendants retained the benefit illegally conferred upon them under circumstances where it would be unjust to do so without payment.

73.     It is against equity and good conscience to permit Defendants to benefit from not paying wages the Plaintiffs earned for work performed.

74.     Plaintiffs are entitled to have Defendants reimburse them in the amount of these unpaid wages plus interest.

## COUNT THREE: NEGLIGENT MISREPRESENTATION

75.     Plaintiffs incorporate paragraphs 1 through 58 by reference herein.

76.     The employment contracts Plaintiffs and Defendant Union entered into on or about June 2023, confirmed Plaintiffs were entitled to payment. Multiple other Administrative Plaintiffs without a written contract were also entitled to payment.

77.     On or about September 6, 2023, Defendant Webb, in her capacity as President of Defendant Union, made statements to Plaintiffs about, among other things, payment of wages.

78.     Plaintiffs and many others relied on this information provided to them by Defendant Webb.

79.     Plaintiffs did not seek other employment because they were told that their wages were going to be paid and their employment contracts would be honored.

80.     Plaintiffs' reliance on the statements by Defendant Webb were soon discovered to be inaccurate, as none of the Plaintiffs have been paid to date.

81.     Defendant Board knew of the statements made by Defendant Webb and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

82.     Defendant Webb, acting within the scope of her employment as President of Defendant Union, failed to exercise reasonable care owed to Plaintiffs in obtaining or communicating accurate information regarding their wages. The statements made by Defendant Webb, in her capacity as President of Defendant Union, demonstrated a conscious disregard for the rights of Plaintiffs and had a great probability of causing substantial harm to them.

83.     Plaintiffs have been substantially harmed by the knowing misrepresentations made by Defendant Webb in an ongoing nature and specifically on or about September 6, 2023.

84.     Plaintiffs have been substantially harmed by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

85.     Defendant Union is liable for the misrepresentations made by Defendant Webb while acting within the scope of her employment as President of Defendant Union.

86.     Plaintiffs are entitled to their actual damages for the negligent misrepresentation by Defendant Webb. Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Plaintiffs due to the misrepresentations by Defendant Webb on behalf of and in her capacity as President of Defendant Union that led to substantial harm to Plaintiffs.

## COUNT FOUR: GROSS NEGLIGENT CONDUCT

87.     Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

88.     The employment contracts many Plaintiffs and Defendant Union entered into on or about June 2023, confirmed Plaintiffs were entitled to wages for work performed. Multiple other Plaintiffs without a written contract were entitled to wages for work performed.

89.     Plaintiffs and others not party to this lawsuit did not seek other employment because they were told that their wages were going to be paid and their employment contracts would be honored. Defendants continue to mislead Plaintiffs regarding the payment of wages by repeatedly telling Plaintiffs their wages were going to be paid and that Defendant Union was going to "Become a Better Union."

90.     Plaintiffs and many others relied on this information provided to them by Defendant Webb.

91.     To date, Plaintiffs have not received their earned wages.

92.     Defendants knew of the inaccurate information regarding wages and did nothing to prevent the disclosure.

93.     Defendant Webb, acting within the scope of her employment as President of Defendant Union, and Board Defendants, acting on behalf of Defendant Union, failed to exercise any care whatsoever owed to Plaintiffs in obtaining or communicating accurate information regarding their wages and benefits. Defendant Webb, and Board Defendants, on behalf of Defendant Union, demonstrated a conscious disregard for the rights of Plaintiffs and had a great probability of causing substantial harm to them.

94.     Plaintiffs have been substantially harmed by the knowing misrepresentations made by Defendant Webb in an ongoing nature and specifically on or about September 6, 2023, which resulted

in uninsured out-of-pocket costs related to prescriptions, doctor visits and other medical care actions that would have otherwise been covered by their health insurance.

95.     Plaintiffs have been substantially harmed by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

96.     Defendant Union is liable for the misrepresentations made by Defendant Webb while acting within the scope of her employment and in her capacity as President of Defendant Union.

97.     Plaintiffs are entitled to their actual damages for the misrepresentations by Defendant Webb.

98.     Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Plaintiffs due to the misrepresentations by Defendants that led to substantial harm to Plaintiffs.

## VI.     CLAIMS BY ADMINISTRATIVE EMPLOYEES

99.     Plaintiffs incorporate paragraphs 1 through 58 by reference herein.

100.     Plaintiffs Alexis Sanchez, Ciana Jones, Crystal Powell, Daneesha Tillman, Jennifer Rothrock, Laura Wright, Patrick Penney, Pearllene Ford, Bonnie Hipp, and Renee Cave are hourly employees ("Administrative Plaintiffs") of Defendant Union.

## COUNT ONE: FAILURE TO PAY MINIMUM WAGE UNDER FLSA

101.     Administrative Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

102.     Administrative Plaintiffs were employees for purposes of 29 U.S.C. § 203(e)(1).

103.     Defendant Union, Defendant Webb and Board Defendants qualify as an "employer" for purposes of 29 U.S.C. § 203(d).

104.     All Defendants knowingly, willfully and without a good faith basis violated FLSA's minimum wage requirements as defined in 29 U.S.C. § 206.

105.     All Defendants continue to deny Administrative Plaintiffs payment for all hours worked. All Defendants have proven they have no regard for the applicable wage and hour laws. All

Defendants continue to deny Administrative Plaintiffs' wages for hours worked. All Defendants' ongoing violations were, and continue to be, in bad faith.

106.     Administrative Plaintiffs are entitled to unpaid wages for hours worked.

107.     Administrative Plaintiffs are entitled to liquidated damages as Defendants have shown a pattern of engaging in bad faith.

108.     Administrative Plaintiffs are entitled to attorney's fees and costs.

## COUNT TWO: FAILURE TO PAY MINIMUM WAGE UNDER OMFWSA AND THE OHIO CONSITUTION

109.     Administrative Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

110.     Administrative Plaintiffs were employees for purposes of O.R.C. §§ 4111.14(B) and the Ohio Constitution Article II, Section 34a.

111.     Defendant Union qualifies as an "employer" for purposes of O.R.C. §§ 4111.14(B) and the Ohio Constitution, Article II, Section 34a.

112.     Defendant Union, through acts within the scope of Defendant Webb and Defendant Board's employment and capacity at Defendant Union, has knowingly violated OMFWSA's minimum wage requirements as defined in Ohio Code § 4111.02.

113.     Defendant Union is a non-profit organization in Ohio making more than $372,000.00 a year, requiring them to pay all employees Ohio's minimum wage rate. As of 2023, Ohio's minimum wage rate is $10.10.

114.     Defendant Union continues to deny Administrative Plaintiffs payment for all hours worked. Defendant Union has proven they have no regard for the applicable wage and hour laws. Defendant Union continues to deny Administrative Plaintiffs' wages for hours worked. Defendant Union's ongoing violations were, and continue to be, in bad faith, willful and without a good faith basis.

115.     Administrative Plaintiffs seek injunctive relief requiring Defendant Union to pay minimum wage in compliance with the OMFWSA.

116.     Administrative Plaintiffs are entitled to unpaid Ohio minimum wages for all hours worked and two times those wages as additional statutory damages, interest, and attorneys' fees and expenses, and all other remedies available.

117.     Administrative Plaintiffs are entitled to attorney's fees and costs.

## COUNT THREE: PROMISSORY ESTOPPEL

118.     Administrative Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

119.     Administrative Plaintiffs and Defendant Union had written and verbal employment contracts which described certain wages and benefits which would be owed to Administrative Plaintiffs and Defendant Union entered into employment contracts for the 2022-2023 and 2023-2024 academic calendar years.

120.     Upon acceptance of the employment contracts by both Administrative Plaintiffs and Defendant Union, each had obligations to fulfil them for the benefit of the other.

121.     Administrative Plaintiffs have fulfilled their obligations under their respective employment contracts.

122.     One such promise was the reimbursement of tuition for faculty who took classes at Defendant Union and/or other universities. Several Administrative Plaintiffs and potentially other Plaintiffs and individuals not party to this suit relied on the tuition reimbursement offered by Defendant Union. Defendants knew of this promise and that employees relied on this promise.

123.     Since at least December of 2022, Defendant Union has failed to pay or made late payments to Administrative Plaintiffs for work performed and benefits owed under the contracts on multiple occasions. Since at least July of 2023, Defendant Union has failed to pay Administrative

Plaintiffs, or any other employee, for any hours worked or for benefits owed under their employment contracts. Defendant Union has not performed its obligations under the employment contracts.

124.    On or about June 2023, Administrative Plaintiffs and other employees of Defendant Union brought these concerns to Defendants attention when they requested a vote of no confidence. Defendant Board took no corrective action.

125.    Defendant Webb has repeatedly promised Administrative Plaintiffs that employment contracts would be upheld.

126.    In an ongoing discussion and specifically on or about September 6, 2023, Defendant Webb, on behalf of and in her capacity as President of Defendant Union, promised Administrative Plaintiffs that they would be paid for hours worked and that employment contracts would be honored. Defendant Webb knew that upon making the statements to Administrative Plaintiffs, they would rely upon her authority in believing such payments would be forthcoming and that benefits were intact.

127.    Defendant Board knew of the statements made by Defendant Webb and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

128.    Defendant Board knew of the statements made by Defendant Webb and took no corrective action after the statements were made to notify Administrative Plaintiffs that they were misled.

129.    Administrative Plaintiffs relied upon Defendant Webb's statements to their detriment by continuing to work for Defendant Union and incurring medical expenses, rather than seeking out new employment. Since the end of July, Administrative Plaintiffs have not received payment for hours worked and have not been reimbursed for tuition.

130.    Administrative Plaintiffs relied upon Defendant Webb's statements to their detriment by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

131.    Administrative Plaintiffs relief upon Defendant Webb's statements to their detriment that employment contracts, and the promises made within them, and have not been reimbursed for tuition while suffering expenses for coursework taken in reliance on Defendants promises.

132.    Administrative Plaintiffs' reliance upon Defendant Webb's statements that Defendant Union would pay them for hours worked and tuition reimbursement has caused injury to Plaintiffs.

133.    Administrative Plaintiffs seek damages including back pay, compensatory damages, and all other damages available by law.

### VII.    CLAIMS BY STIPEND FACTULY

134.    Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

135.    Plaintiffs Ami Bryant, Andrew Harsh, Beryl Watnick, Cynthia Blocksom, David McDonnell, David Verdonck, Linda Smith, Loree Miltich, Marjorie Williams-Cooper, Michelle Kefford, and Terri Mendoza are stipend employees ("Stipend Faculty Plaintiffs") of Defendant Union.

### COUNT ONE: BREACH OF CONTRACT

136.    Stipend Faculty Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

137.    Stipend Faculty Plaintiffs and Defendant Union entered into verbal and written employment contracts for the 2022-2023 and 2023-2024 academic calendar years.

138.    Upon acceptance of the employment contracts by both Stipend Faculty Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other.

139.    Stipend Faculty Plaintiffs have performed their obligations under their respective employment contracts.

140.    Since at least December of 2022, Defendant Union has either paid Stipend Faculty Plaintiffs late or failed to pay at all for work performed under the contracts on multiple occasions. Since at least July of 2023, Defendant Union has failed to pay Stipend Faculty Plaintiffs for any hours

worked or under their employment contracts. Defendant Union has not performed its obligations under the employment contracts.

141.    Due to Defendant Union's breach of its obligations under the employment contracts, Stipend Faculty Plaintiffs have suffered financial injury and damages, including backpay, compensatory damages and all other damages available by law.

## COUNT TWO: TORTIOUS INTERFERENCE WITH STIPEND FACULTY PLAINTIFFS' CONTRACTS

142.    Stipend Faculty Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

143.    The employment contracts Stipend Faculty Plaintiffs and Defendant Union entered into on or about June 2023, confirmed Plaintiffs were entitled to payment for hours worked. Multiple other Stipend Faculty Plaintiffs without a written contract were told they were entitled to payment for hours worked. Defendant Webb knew of the contracts between Stipend Faculty Plaintiffs and Defendant Union.

144.    Stipend Faculty Plaintiffs and many others relied on this information provided to them by Defendant Webb.

145.    Multiple Stipend Faculty Plaintiffs did not seek other employment because they were told that their wages were going to be paid, and their employment contracts would be honored.

146.    Plaintiffs' reliance on the statements by Defendant Webb were soon discovered to be inaccurate, as Stipend Faculty Plaintiffs have not been paid for hours worked in accordance with the written or verbal employment contracts.

147.    Defendant Board knew of the statements made by Defendant Webb and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

148.    Defendant Webb, acting within the scope of her employment as President of Defendant Union, failed to exercise reasonable care owed to Stipend Faculty Plaintiffs in obtaining or communicating accurate information regarding their payment for hours worked. The statements made

by Defendant Webb, in her capacity as President of Defendant Union, demonstrated a conscious disregard for the rights of Stipend Faculty Plaintiffs and had a great probability of causing substantial harm to them.

149.    Stipend Faculty Plaintiffs have been substantially harmed by the knowing misrepresentations made by Defendant Webb in an ongoing nature and specifically on or about September 6, 2023. Stipend Faculty Plaintiffs have been substantially harmed by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

150.    Defendant Union is liable for the misrepresentations made by Defendant Webb while acting within the scope of her employment as President of Defendant Union.

151.    Stipend Faculty Plaintiffs are entitled to their actual damages for the negligent misrepresentation by Defendant Webb on behalf of and in her capacity as President of Defendant Union.

152.    Stipend Faculty Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Stipend Faculty Plaintiffs due to the misrepresentations by Defendant Webb on behalf of and in her capacity as President of Defendant Union that led to substantial harm to Stipend Faculty Plaintiffs.

## <u>COUNT THREE: PROMISSORY ESTOPPEL</u>

153.    Stipend Faculty Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

154.    Stipend Faculty Plaintiffs' and Defendant Union's verbal and written employment contracts described certain wages which would be owed to Stipend Faculty Plaintiffs and Defendant Union entered into employment contracts for the 2022-2023 and 2023-2024 academic calendar years.

155.    Upon acceptance of the employment contracts by both Stipend Faculty Plaintiffs and Defendant Union, each had obligations to fulfill for the benefit of the other.

156. Stipend Faculty Plaintiffs have fulfilled their obligations under their respective employment contracts.

157. Since at least December of 2022, Defendant Union has failed to pay or made late payments to Stipend Faculty Plaintiffs for work performed under the contracts on multiple occasions. Since at least July of 2023, Defendant Union has failed to pay Stipend Faculty Plaintiffs, or any other employee, for any hours worked under their employment contracts. Defendant Union has not performed its obligations under the employment contracts.

158. On or about June 2023, Stipend Faculty Plaintiffs and other employees of Defendant Union brought these concerns to Defendants attention when they requested a vote of no confidence. Defendant Board took no corrective action.

159. Defendant Webb has repeatedly promised Stipend Faculty Plaintiffs past due wages and ongoing wages incurred for work Plaintiffs continue to perform without payment.

160. In an ongoing discussion and specifically on or about September 6, 2023, Defendant Webb, on behalf of and in her capacity as President of Defendant Union, promised Stipend Faculty Plaintiffs that they would be paid for hours worked consistent with their contracts. Defendant Webb knew that upon making the statements to Stipend Faculty Plaintiffs, they would rely upon her authority in believing such payments would be forthcoming and that benefits were intact.

161. Defendant Board knew of the statements made by Defendant Webb and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

162. Defendant Board knew of the statements made by Defendant Webb and took no corrective action after the statements were made to notify Plaintiffs that they were misled.

163. Since the end of July, Stipend Faculty Plaintiffs have not received payment for hours worked and benefits owed.

164. Stipend Faculty Plaintiffs relied upon Defendant Webb's statements to their detriment by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

165. Stipend Faculty Plaintiffs' reliance upon Defendant Webb's statements that Defendant Union would pay them for hours worked and benefits owed has caused injury to Stipend Faculty Plaintiffs.

166. Stipend Faculty Plaintiffs seek damages including back pay, compensatory damages and all other damages available by law.

## VIII.   CLAIMS BY FULL-TIME FACULTY

167. Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

168. Plaintiffs Ami Bryant, Corina Smith, Crystal Powell, Dr. Roland Pandolfi, Kongpheng Yang, Laura Wright, Lawrence Hibbert, Monique Skinner, Nadine Wheat, Paul Brugman, Rachel Daigle, and Robert Knight are salary employees ("Full-Time Faculty Plaintiffs") of Defendant Union.

## COUNT ONE: BREACH OF CONTRACT

169. Full-Time Faculty Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

170. Full-Time Faculty Plaintiffs and Defendant Union entered into verbal and written employment contracts for the 2022-2023 and 2023-2024 academic calendar years.

171. Upon acceptance of the employment contracts by both Full-Time Faculty Plaintiffs and Defendant Union, each had obligations to perform for the benefit of the other.

172. Full-Time Faculty Plaintiffs have performed their obligations under their respective employment contracts.

173. Since at least December of 2022, Defendant Union has either paid Full-Time Faculty Plaintiffs late or failed to pay at all for work performed and benefits owed under the contracts on multiple occasions. Since at least July of 2023, Defendant Union has failed to pay Full-Time Faculty

Plaintiffs for any hours worked or for benefits owed under their employment contracts. Defendant Union has not performed its obligations under the employment contracts.

174.     Due to Defendant Union's breach of its obligations under the employment contracts, Full-Time Faculty Plaintiffs have suffered financial injury and damages, including backpay, compensatory damages and all other damages available by law.

## COUNT TWO: TORTIOUS INTERFERENCE WITH FULL-TIME FACULTY PLAINTIFFS' CONTRACTS

175.     Full-Time Faculty Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

176.     The employment contracts Full-Time Faculty Plaintiffs and Defendant Union entered into on or about June 2023, confirmed Plaintiffs were eligible for health insurance benefits. Multiple other Full-Time Faculty Plaintiffs without a written contract were told they were eligible for benefits. Defendant Webb knew of the contracts between Full-Time Faculty Plaintiffs and Defendant Union.

177.     On or about September 6, 2023, Defendant Webb, in her capacity as President of Defendant Union, made statements to Full-Time Faculty Plaintiffs confirming that they still had active health insurance.

178.     Full-Time Faculty Plaintiffs and many others relied on this information provided to them by Defendant Webb.

179.     Full-Time Faculty Plaintiffs and many others had insurance premiums deducted from their wages to pay for their health insurance benefits.  Those payments were misappropriated by Defendants.

180.     Full-Time Faculty Plaintiffs and other individuals working for Defendant Union relied on these statements by Defendant Webb by continuing to use the benefits when getting prescriptions filled by pharmacies, visiting the doctor and many other actions taken in reliance of Defendant Webb's statements.

181.     Full-Time Faculty Plaintiffs did not seek other employment because they were told that their wages were going to be paid, and their employment contracts would be honored.

182.     Plaintiffs' reliance on the statements by Defendant Webb were soon discovered to be inaccurate, as Full-Time Faculty Plaintiffs health benefits had been retroactively revoked on or about June 30, 2023.

183.     Defendant Board knew of the statements made by Defendant Webb and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

184.     Defendant Webb, acting within the scope of her employment as President of Defendant Union, failed to exercise reasonable care owed to Full-Time Faculty Plaintiffs in obtaining or communicating accurate information regarding their benefits. The statements made by Defendant Webb, in her capacity as President of Defendant Union, demonstrated a conscious disregard for the rights of Full-Time Faculty Plaintiffs and had a great probability of causing substantial harm to them.

185.     Full-Time Faculty Plaintiffs have been substantially harmed by the knowing misrepresentations made by Defendant Webb in an ongoing nature and specifically on or about September 6, 2023, which resulted in uninsured out-of-pocket costs related to prescriptions, doctor visits and other medical care actions that would have otherwise been covered by their health insurance.

186.     Full-Time Faculty Plaintiffs have been substantially harmed by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

187.     Defendant Union is liable for the misrepresentations made by Defendant Webb while acting within the scope of her employment as President of Defendant Union.

188.     Full-Time Faculty Plaintiffs are entitled to their actual damages for the negligent misrepresentation by Defendant Webb on behalf of and in her capacity as President of Defendant Union.

189.     Full-Time Faculty Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Full-Time Faculty Plaintiffs due to the misrepresentations by Defendant Webb on behalf of and in her capacity as President of Defendant Union that led to substantial harm to Full-Time Faculty Plaintiffs.

## COUNT THREE: PROMISSORY ESTOPPEL

190.     Full-Time Faculty Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

191.     Full-Time Faculty Plaintiffs' and Defendant Union's verbal and written employment contracts described certain wages and benefits which would be owed to Full-Time Faculty Plaintiffs and Defendant Union entered into employment contracts for the 2022-2023 and 2023-2024 academic calendar years.

192.     Upon acceptance of the employment contracts by both Full-Time Faculty Plaintiffs and Defendant Union, each had obligations to fulfill for the benefit of the other.

193.     Full-Time Faculty Plaintiffs have fulfilled their obligations under their respective employment contracts.

194.     Since at least December of 2022, Defendant Union has failed to pay or made late payments to Full-Time Faculty Plaintiffs for work performed and benefits owed under the contracts on multiple occasions. Since at least July of 2023, Defendant Union has failed to pay Full-Time Faculty Plaintiffs, or any other employee, for any hours worked or for benefits owed under their employment contracts. Defendant Union has not performed its obligations under the employment contracts.

195.     On or about June 2023, Full-Time Faculty Plaintiffs and other employees of Defendant Union brought these concerns to Defendants attention when they requested a vote of no confidence.  Defendant Board took no corrective action.

196.     Defendant Webb has repeatedly promised Full-Time Faculty Plaintiffs past due wages and ongoing wages incurred for work Full-Time Faculty Plaintiffs continue to perform without payment.

197.     In an ongoing discussion and specifically on or about September 6, 2023, Defendant Webb, on behalf of and in her capacity as President of Defendant Union, promised Full-Time Faculty Plaintiffs that they would be paid for hours worked and that they still had benefits consistent with their contracts. Defendant Webb knew that upon making the statements to Full-Time Faculty Plaintiffs, they would rely upon her authority in believing such payments would be forthcoming and that benefits were intact.

198.     Defendant Board knew of the statements made by Defendant Webb and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

199.     Defendant Board knew of the statements made by Defendant Webb and took no corrective action after the statements were made to notify Plaintiffs that they were misled.

200.     Full-Time Faculty Plaintiffs relied upon Defendant Webb's statements to their detriment by continuing to work for Defendant Union and incurring medical expenses, rather than seeking out new employment. Since the end of July, the Full-Time Faculty Plaintiffs have not received payment for hours worked and benefits owed.

201.     Full-Time Faculty Plaintiffs relied upon Defendant Webb's statements to their detriment by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

202.     Full-Time Faculty Plaintiffs' reliance upon Defendant Webb's statements that Defendant Union would pay them for hours worked and benefits owed has caused injury to Full-Time Faculty Plaintiffs.

203.     Full-Time Faculty Plaintiffs seek damages including back pay, compensatory damages and all other damages available by law.

## IX.     NEGLIGENCE CLAIMS RELATED TO BENEFITS

204.     Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

205.     Plaintiffs Renee Cave, Ami Bryant, Monique Skinner, Crystal Powell, Alexis Sanchez, Paul Brugman, Lawrence Hibbert, Robert Knight, Patrick Penney, Pearllene Ford, Rachel Daigle, and Nadine Wheat are employees who were provided with employee benefits ("Negligence Plaintiffs") from Defendant Union.

## COUNT ONE: NEGLIGENT MISREPRESENTATION

206.     Negligence Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

207.     The employment contracts Negligence Plaintiffs and Defendant Union entered into on or about June 2023, confirmed Negligence Plaintiffs were eligible for health insurance benefits. Multiple other Administrative Plaintiffs without a written contract were told they were eligible for benefits. Defendant Webb knew of the contracts between Negligence Plaintiffs and Defendant Union.

208.     On or about September 6, 2023, Defendant Webb, in her capacity as President of Defendant Union, made statements to Plaintiffs confirming that they still had active health insurance.

209.     Negligence Plaintiffs and many others relied on this information provided to them by Defendant Webb.

210.     Negligence Plaintiffs and other individuals working for Defendant Union relied on these statements by Defendant Webb by continuing to use the benefits when getting prescriptions filled by pharmacies, visiting the doctor and many other actions taken in reliance of Defendant Webb's statements.

211.     Negligence Plaintiffs did not seek other employment because they were told that their wages were going to be paid, and their employment contracts would be honored.

212. Negligence Plaintiffs' reliance on the statements by Defendant Webb were soon discovered to be inaccurate, as Negligence Plaintiffs health benefits had been retroactively revoked on or about June 30, 2023.

213. Defendant Board knew of the statements made by Defendant Webb and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

214. Defendant Webb, acting within the scope of her employment as President of Defendant Union, failed to exercise reasonable care owed to Negligence Plaintiffs in obtaining or communicating accurate information regarding their benefits. The statements made by Defendant Webb, in her capacity as President of Defendant Union, demonstrated a conscious disregard for the rights of Plaintiffs and had a great probability of causing substantial harm to them.

215. Negligence Plaintiffs have been substantially harmed by the knowing misrepresentations made by Defendant Webb in an ongoing nature and specifically on or about September 6, 2023, which resulted in uninsured out-of-pocket costs related to prescriptions, doctor visits and other medical care actions that would have otherwise been covered by their health insurance.

216. Negligence Plaintiffs have been substantially harmed by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

217. Defendant Union is liable for the misrepresentations made by Defendant Webb while acting within the scope of her employment as President of Defendant Union.

218. Negligence Plaintiffs are entitled to their actual damages for the negligent misrepresentation by Defendant Webb.

219. Negligence Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Negligence Plaintiffs due to the misrepresentations by Defendant Webb on behalf of and in her capacity as President of Defendant Union that led to substantial harm to Negligence Plaintiffs.

## COUNT TWO: GROSS NEGLIGENT CONDUCT

220.    Negligence Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

221.    The employment contracts Negligence Plaintiffs and Defendant Union entered into on or about June 2023, confirmed Negligence Plaintiffs were eligible for health insurance benefits. Multiple other Plaintiffs without a written contract were told they were eligible for benefits. Defendant Webb knew of the contracts between Negligence Plaintiffs and Defendant Union.

222.    Defendant Webb continued to mislead Negligence Plaintiffs regarding the payment of wages and on or about September 6, 2023, in her capacity as President of Defendant Union, Defendant Webb told Negligence Plaintiffs that they still had their benefits.

223.    Negligence Plaintiffs and many others relied on this information provided to them by Defendant Webb.

224.    Negligence Plaintiffs and other individuals working for Defendant Union relied on these statements by Defendant Webb by continuing to use the benefits when getting prescriptions filled by pharmacies, visiting the doctor and many other actions taken in reliance of Defendant Webb's statements.

225.    Negligence Plaintiffs and others not party to this lawsuit did not seek other employment because they were told that their wages were going to be paid, and their employment contracts would be honored.

226.    Negligence Plaintiffs' reliance on the statements by Defendant Webb were soon discovered to be inaccurate, as Negligence Plaintiffs health benefits had been retroactively revoked on or about June 30, 2023.  To date, Plaintiffs have not received their earned wages.

227.    Defendant Board and Board Defendants knew of the statements made by Defendant Webb and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

228.     Defendant Webb, acting within the scope of her employment as President of Defendant Union, failed to exercise any care whatsoever owed to Plaintiffs in obtaining or communicating accurate information regarding their wages and benefits. The statements made by Defendant Webb, on behalf of Defendant Union, demonstrated a conscious disregard for the rights of Negligence Plaintiffs and had a great probability of causing substantial harm to them.

229.     Negligence Plaintiffs have been substantially harmed by the knowing misrepresentations made by Defendant Webb in an ongoing nature and specifically on or about September 6, 2023, which resulted in uninsured out-of-pocket costs related to prescriptions, doctor visits and other medical care actions that would have otherwise been covered by their health insurance.

230.     Negligence Plaintiffs have been substantially harmed by continuing to work for no wages while suffering missed opportunities of gainful and meaningful employment.

231.     Defendant Union is liable for the misrepresentations made by Defendant Webb while acting within the scope of her employment and in her capacity as President of Defendant Union.

232.     Negligence Plaintiffs are entitled to their actual damages for the misrepresentations by Defendant Webb.

233.     Negligence Plaintiffs are entitled to punitive damages for the conscious disregard for the rights of Negligence Plaintiffs due to the misrepresentations by Defendant Webb on behalf of and in her capacity as President of Defendant Union that led to substantial harm to Plaintiffs.

## COUNT THREE: NEGLIGENCE PER SE

234.     Negligence Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

235.     The employment contracts Plaintiffs and Defendant Union entered into on or about June 2023, confirmed Negligence Plaintiffs were eligible for health insurance benefits. Multiple other Negligence Plaintiffs without a written contract were told they were eligible for benefits. Defendant Webb knew of the contracts between Negligence Plaintiffs and Defendant Union.

236. Defendant Webb continued to mislead Negligence Plaintiffs regarding the payment of wage and on or about September 6, 2023, in her capacity as President of Defendant Union, Defendant Webb told Negligence Plaintiffs that they still had their benefits.

237. This was inaccurate as Negligence Plaintiffs health insurance had been retroactively revoked on June 30, 2023.

238. Defendant Board and Board Defendants knew of these actions and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

239. OPPA requires employers who provide fringe benefits to act as a trustee of such funds under the agreement between an employer and employee.

240. Defendants were required to act as such a trustee under the employment contract in accordance with OPPA.

241. Defendant Webb made poor decisions when managing Negligence Plaintiffs' benefits.

242. Defendant Board and Board Defendants knew of these poor decisions and did nothing to prevent harm to Negligence Plaintiffs.

243. As a result of the poor decisions and failure to prevent harm to Negligence Plaintiffs, Defendants were negligent per se in acting as a trustee of the funds under the employment contract.

244. Defendant's breach has caused harm to Negligence Plaintiffs. Negligence Plaintiffs seek damages due to the negligent actions taken by Defendants.

## X. ERISA CLAIMS

245. Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

246. Plaintiffs Renee Cave, Ami Bryant, Monique Skinner, Crystal Powell, Alexis Sanchez, Lawrence Hibbert, Robert Knight, Patrick Penney, Pearllene Ford, Nadine Wheat, Rachel Daigle, and Ciana Jones are employees who were provided with employee benefits ("ERISA Plaintiffs").

## COUNT ONE: BREACH OF FIDUCIARY DUTY TO ACT WITH CARE, SKILL, PRUDENCE AND DILLIGENCE UNDER THE CIRCUMSTANCES

247. ERISA Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

248. Defendant Union contracted with ERISA Plaintiffs to provide certain benefits, which includes but is not limited to, health insurance, dental insurance, vision insurance, health reimbursement accounts and 403(b) retirement accounts. Each of these are considered benefits under ERISA. Health Savings Accounts ("HSA") are considered within the realm of ERISA when an employer limits the ability of eligible individuals to move their funds to another HSA and when the employer receives any payment of compensation in connection with the HSA.

249. Defendants each owed a co-fiduciary duty to ERISA Plaintiffs to ensure that these benefits were being paid. However, Defendants did not ensure these benefits were being paid so that Plaintiffs had these benefits when the need to utilize them arose.

250. On or about September 6, 2023, Defendant Webb, on behalf of and in her capacity as President of Defendant Union, made several statements to ERISA Plaintiffs that they still had their benefits.

251. This was inaccurate as ERISA Plaintiffs health insurance had been retroactively revoked on June 30, 2023.

252. Defendant Board knew of these actions and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

253. On or about October 2023, ERISA Plaintiffs with HRA's and HSA's became aware that they had been blocked from accessing their accounts and/or that the money had been removed by Defendant Union. Defendants have limited the ability of eligible individuals with HSA's to move their funds to another HSA. Defendants have effectively received payment or compensation in connection with the HSA's by removing funds and/or blocking account access to ERISA Plaintiffs.

254. Defendants breached their fiduciary duty of prudence by failing to act with care, skill, prudence, and diligence under the circumstances when dealing with ERISA Plaintiffs' benefits.

255. ERISA Plaintiffs have suffered harm because of Defendants breach. Defendants have caused damage to Plaintiff as a result of their breach.

256. ERISA Plaintiffs seek injunctive relief requiring Defendants, collectively, to pay for ERISA Plaintiffs damages because of Defendants breach of their fiduciary and co-fiduciary duties. ERISA Plaintiffs seek damages for ERISA violation because of actions taken by Defendants when handling their benefits.

## COUNT TWO: BREACH OF FIDUCIARY DUTY OF DISCLOSURE

257. ERISA Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

258. Defendant Union contracted with ERISA Plaintiffs to provide certain benefits, which includes but is not limited to, health insurance, dental insurance, vision insurance, health reimbursement accounts and 403(b) retirement accounts. Each of these are considered benefits under ERISA. Health Savings Accounts ("HSA") are considered within the realm of ERISA when an employer limits the ability of eligible individuals to move their funds to another HSA and when the employer receives any payment of compensation in connection with the HSA.

259. Defendants each owed a co-fiduciary duty to ERISA Plaintiffs to ensure that these benefits were being paid. However, Defendants did not ensure these benefits were being paid so that Plaintiffs had these benefits when the need to utilize them arose.

260. On or about September 6, 2023, Defendant Webb, on behalf of and in her capacity as President of Defendant Union, made several statements to ERISA Plaintiffs that they still had their benefits.

261. This was inaccurate as ERISA Plaintiffs health insurance had been retroactively revoked on June 30, 2023.

262. Defendant Board knew of these actions and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

263. On or about October 2023, ERISA Plaintiffs with HRA's and HSA's became aware that they had been blocked from accessing their accounts and/or that the money had been removed by Defendant Union. Defendants have limited the ability of eligible individuals with HSA's to move their funds to another HSA. Defendants have effectively received payment or compensation in connection with the HSA's by removing funds and/or blocking account access to ERISA Plaintiffs.

264. Defendants breached their fiduciary duty of disclosure to Plaintiffs by failing to provide accurate and material information regarding Defendant Union's benefits to employees.

265. ERISA Plaintiffs have suffered harm because of Defendants breach. Defendants have caused damage to Plaintiff as a result of their breach.

266. ERISA Plaintiffs seek injunctive relief requiring Defendants, collectively, to pay for ERISA Plaintiffs damages because of Defendants breach of their fiduciary and co-fiduciary duties. ERISA Plaintiffs seek damages for ERISA violation because of actions taken by Defendants when handling their benefits.

## COUNT THREE: BREACH OF FIDUCIARY DUTY OF LOYALTY

267. ERISA Plaintiffs incorporate paragraphs 1 through 59 by reference herein.

268. Defendant Union contracted with ERISA Plaintiffs to provide certain benefits, which includes but is not limited to, health insurance, dental insurance, vision insurance, health reimbursement accounts and 403(b) retirement accounts. Each of these are considered benefits under ERISA. Health Savings Accounts ("HSA") are considered within the realm of ERISA when an employer limits the ability of eligible individuals to move their funds to another HSA and when the employer receives any payment of compensation in connection with the HSA.

269.     Defendants each owed a co-fiduciary duty to ERISA Plaintiffs to ensure that these benefits were being paid. However, Defendants did not ensure these benefits were being paid so that Plaintiffs had these benefits when the need to utilize them arose.

270.     On or about September 6, 2023, Defendant Webb, on behalf of and in her capacity as President of Defendant Union, made several statements to ERISA Plaintiffs that they still had their benefits.

271.     This was inaccurate as ERISA Plaintiffs health insurance had been retroactively revoked on June 30, 2023.

272.     Defendant Board knew of these actions and did nothing to prevent the disclosure of inaccurate information by Defendant Webb.

273.     On or about October 2023, ERISA Plaintiffs with HRA's and HSA's became aware that they had been blocked from accessing their accounts and/or that the money had been removed by Defendant Union. Defendants have limited the ability of eligible individuals with HSA's to move their funds to another HSA. Defendants have effectively received payment or compensation in connection with the HSA's by removing funds and/or blocking account access to ERISA Plaintiffs.

274.     Defendants breached their fiduciary duty of loyalty and care to Plaintiffs by failing to utilize the loyalty and care necessary to ensure Plaintiffs would not be harmed by Defendants actions when handling finances for employee benefits.

275.     ERISA Plaintiffs have suffered harm because of Defendants breach. Defendants have caused damage to Plaintiff as a result of their breach.

276.     ERISA Plaintiffs seek injunctive relief requiring Defendants, collectively, to pay for ERISA Plaintiffs damages because of Defendants breach of their fiduciary and co-fiduciary duties. ERISA Plaintiffs seek damages for ERISA violation because of actions taken by Defendants when handling their benefits.

## XI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court will enter judgment against Defendants and grant the following relief:

277.    Declaratory and injunctive relief requiring Defendants to pay Plaintiffs for ongoing wages earned;

278.    Back pay;

279.    Front pay;

280.    Equitable relief (where applicable);

281.    Compensatory Damages (where applicable);

282.    Liquidated Damages (where applicable);

283.    Punitive Damages (where applicable);

284.    Lost wages or other economic damages directly related to Defendants unlawful conduct (where applicable);

285.    Lost employee benefits or other economic damages directly related to Defendants unlawful conduct (where applicable);

286.    Pre-judgment interest; and

287.    Reasonable attorney fees and costs (where applicable).

## XII.    JURY DEMAND

Plaintiffs, by counsel, hereby request that trial of this matter be tried by a jury.


Respectfully submitted,

*/s/ Rachel J. Guin*
Rachel J. Guin (IN Bar No. 31722-02)
Admitted Pro Hac Vice
**ROTHBERG LAW FIRM**

505 E. Washington Blvd.
Fort Wayne, IN 46859
(P) (260) 422-9454
(F) (260) 422-1622
(E) rguin@rothberg.com


*/s/ Robert E. DeRose* _____
Robert E. DeRose (OH Bar No. 0055214)
Anna R. Caplan (OH Bar No. 0104562)
**BARKAN MEIZLISH DEROSE COX, LLP**
4200 Regent Street, Suite 210
Columbus, OH 43219
(P) 614-221-4221
(F) 614-744-2300
(E) bderose@barkanmeizlish.com
(E) acaplan@barkanmeizlish.com